IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

| UNITED STATES OF AMERICA, | ) | |
|---|---|---|
| Plaintiff, | ) | |
| v. | ) | Case No. CR-17-290-D |
| DANIEL WEBSTER KEOGH and DANIELLE KEOGH a/k/a DANIELLE E. TRUITT, | ) | |
| Defendants. | ) | |

# ORDER

Currently pending before the Court is Plaintiff's Motion to Find Breach of Plea Agreement [Doc. No. 32].[1] The Motion is fully briefed, including authorized reply and surreply briefs. Upon consideration of the preliminary issue of whether Defendant Daniel Webster Keogh breached a plea agreement with the government, the Court finds that an evidentiary hearing is needed to determine whether the plea agreement was knowingly and voluntarily made or, as Mr. Keogh alleges, was coerced by the government.

## Factual Background [2]

Mr. Keogh executed a plea agreement and a plea petition in August 2017, for a case that was dismissed after he decided not to enter a guilty plea to a charge of making a false

---

[1] The government's filing includes an additional Motion *in Limine* to Pre-Admit Plea Agreement and Petition into Evidence. The Court must determine that Mr. Keogh breached a binding plea agreement and the waivers in it are enforceable, before reaching the evidentiary questions raised by the Motion.

[2] The Court summarizes facts shown by the motion papers only for purposes of this Order. This statement does not constitute a finding of any disputed fact.

statement to a federal agency, the United States Department of Agriculture (USDA). *See United States v. Keogh*, Case No. CR-17-191-M (W.D. Okla. Aug. 28, 2017). In that case, Mr. Keogh was charged by information with falsely representing in December 2010 that a $3.2 million loan obtained from First Pryority Bank, and guaranteed by the USDA through a rural development program, would be used to purchase machinery and equipment for one of his companies (Triton Scientific, LLC) when in fact he intended to, and did, use the funds for research and development costs incurred by another company (EMB Energy, LLC). Triton stopped making payments on the loan in 2013. The government states that a criminal investigation into Mr. Keogh's conduct began in January 2013, and he was interviewed numerous times beginning in February 2013 while represented by experienced criminal defense counsel. Two of his current attorneys, Clifford Haines and Ed Blau, have represented him since 2015.

It appears from the motion papers that the government's 2017 plea offer was presented to Mr. Blau in a meeting on July 25, 2017, in the form of the proposed Information and a draft plea agreement with an acceptance deadline of Friday, August 18, 2017. Before and after the deadline, counsel for Mr. Keogh and an attorney representing Mrs. Keogh met with prosecutors to discuss the government's case, and as a result of negotiations, Mr. Keogh's counsel was presented on August 25, 2017, with a revised plea agreement with a deadline the same day.[3] However, plea discussions continued through the weekend among

---

[3] The government says Mrs. Keogh's counsel "attended because, in negotiations, the United States had indicated that Ms. Keogh was also involved in the alleged schemes and that if Defendant accepted the Plea Agreement, the United States would halt its investigation into [Mr. Keogh's] conduct and Ms. Keog's conduct." *See* Mot. at 3-4. However, the plea agreement contains no provision regarding Mrs. Keogh; the government's obligations include only a promise that

2

Mr. Keogh, his attorneys, Mrs. Keogh, and their families. Late Sunday evening, August 27, 2017, Mr. Blau delivered the signed plea agreement and an executed plea petition to government counsel, who executed it the next day (August 28, 2017), and filed the Information. In pertinent part, the agreement provided as follows:

> The parties also recognize that if the Court determines defendant has violated any provision of this Agreement or authorizes defendant to withdraw from his knowing and voluntary guilty plea entered pursuant to this Agreement: (a) all written or oral statements made by defendant to the Court or to federal or other designated law enforcement agents, any testimony given by defendant before a grand jury or other tribunal, whether before or after the signing of this Agreement, and any leads from those statements or testimony, shall be admissible in evidence in any criminal proceeding brought against defendant; and (b) defendant shall assert no claim under the United States Constitution, any statute, Federal Rule of Criminal Procedure 11(f), Federal Rule of Evidence 410, or any other federal rule or law that those statements or any leads from those statements should be suppressed. <u>Defendant knowingly and voluntarily waives the rights described in this paragraph as of the time he signs this Agreement.</u>

Gov't Mot. Ex. 1, [Doc. No. 32-1], Plea Agreement ¶ 13 (emphasis added).

**Standard of Decision**

By its Motion, the government seeks a determination that Mr. Keogh breached the plea agreement by refusing to enter a guilty plea in the 2017 case and that his waiver of evidentiary rights in the quoted paragraph is enforceable at a jury trial in this case. In this circuit, a defendant has a right to "a judicial determination, based on adequate evidence, of a defendant's breach of a plea bargaining agreement." *United States v. Calabrese*, 645 F.2d

---

Mr. Keogh will not be prosecuted for any crimes related to his part in (1) obtaining the $3.2 million bank loan and (2) "acquiring federal defense contract funds, paying subcontractors on those federal defense contracts, and diverting any federal defense contract funds while employed at OSU-UML from 2010 through December 2012." *See* Plea Agreement [Doc. No. 32-1], ¶ 14. The agreement stated that it "does not provide any protection against prosecution for any crime not specifically described above." *Id*.

1379, 1390 (10th Cir. 1981); *accord United States v. Cudjoe*, 534 F.3d 1349, 1354 (10th Cir. 2008): *United States v. Guzman*, 318 F.3d 1191, 1196 (10th Cir. 2003). Further, "[i]f the pleadings reveal a factual dispute on the issue of breach, the district court must hold a hearing to resolve the factual issues." *Calabrese*, 645 F.2d at 1390; *Guzman*, 318 F.3d at 1196.

Mr. Keogh does not disagree with many of the facts on which the government relies, but he resists a finding that he breached the plea agreement on two principle grounds: A) the plea agreement never became binding and enforceable because it was not approved or accepted by the Court; and B) Mr. Keogh did not enter into the plea agreement knowingly or voluntarily.[4]

## Discussion

The parties fundamentally disagree on whether the plea agreement, and particularly Mr. Keogh's waiver of rights under Rule 410, took effect immediately upon his signing the agreement or whether the waiver was ineffective because the agreement was never accepted by a judge. Although the emphasized portion of the waiver provision (quoted *supra*) seems to provide an unambiguous answer this question, Mr. Keogh argues that Tenth Circuit law requires a plea agreement (and any written waivers in it) must be approved and accepted by a judge to become binding and enforceable. He primarily relies on two Tenth Circuit opinions, both of which concern a waiver of the defendant's right to appeal: *United States*

---

[4] Mr. Keogh argues an additional ground in his brief: that "the government nullified the plea agreement." *See* Mr. Keogh's Resp. Br. [Doc. No. 39] at 12. Upon consideration of the factual allegations and materials presented by Mr. Keogh, however, the Court finds that this ground lacks factual support. It depends solely on statements by *Mr. Keogh* in his filings in the prior case and not on any statement or conduct by the government that could reasonably be construed as its exercise of a right under paragraph 12 of the plea agreement to declare the agreement null and void. *See id*. at 12-13.

*v. Novosel*, 481 F.3d 1288, 1292 (10th Cir. 2007); and *United States v. Nichols*, 267 F. App'x 789, 791 (10th Cir. 2008) (unpublished).

In *Novosel*, the defendant pled guilty under a plea agreement that was accepted by the district court, but the question was whether it included a waiver of his appellate rights. The written agreement originally did not contain an appeal-waiver provision; the provision was added at the plea hearing after the judge inquired about its absence and the prosecutor represented that the omission was inadvertent. After the waiver provision was added and the judge made sure the defendant understood and agreed to it, the district court accepted the plea agreement. The defendant later attempted to appeal, but the court of appeals found the waiver was enforceable, reasoning that "at the time Novesel accepted the appeal-waiver modification, not only was the plea agreement wholly executory, it was not yet binding because the district court had not yet accepted Novosel's guilty plea." *See Novosel*, 481 F.3d at 1291.

The Tenth Circuit reached this conclusion based on a statement of the law regarding "formation of a binding plea agreement" as follows:

> Although the interpretation of a plea agreement may be informed by contract law, the formation and acceptance of a binding plea agreement is governed by Federal Rule of Criminal Procedure 11. . . .
>
>> In most cases, contract principles will be wholly dispositive because neither side should be able, any more than would be private contracting parties, unilaterally to renege or seek modification simply because of uninduced mistake or change of mind. A plea agreement, however, is not simply a contract between two parties. It necessarily implicates the integrity of the criminal justice system and requires the courts to exercise judicial authority in considering the plea agreement and in accepting or rejecting the plea.

5

[*United States v.*] *Wood*, 378 F.3d [342] at 348 [(4th Cir. 2004)] (quotations and alterations omitted).

. . . Courts have held that under Rule 11, "[a] plea agreement, and therefore any modification of a plea agreement, must be accepted by the court before it is binding." *United States v. Floyd*, 1 F.3d 867, 870 (9th Cir. 1993); *see also United States v. Gonzalez*, 918 F.2d 1129, 1133 (3d Cir. 1990) ("[A] plea agreement is neither binding nor enforceable until it is accepted in open court.").

Here, when the government sought to add an appeal waiver provision at Novosel's plea hearing, the district court had not yet accepted Novosel's guilty plea or the plea agreement. . . . The district court did not accept either Novesel's guilty plea or the plea agreement until after the parties had added the appeal waiver to the plea agreement and the court had questioned and advised Novosel in accordance with Rule 11(b)(1)-(3), including informing him of his appeal rights and the terms of the appeal waiver provision.

It is clear under Rule 11 that, until the moment the court accepted his guilty plea, Novosel was free to withdraw his guilty plea "for any reason or no reason." Rule 11(d)(1). By the same token, because the court had not yet accepted his guilty plea, Novosel retained the choice to either accept the appeal-waiver modification or reject the modification and proceed to trial when the government proposed adding the appeal-waiver provision to the plea agreement. *See id*.

*Novosel*, 481 F.3d at 1291-93 (footnotes omitted).[5] After rejecting Novosel's challenge to the addition of the waiver, and finding that he knowingly and voluntarily agreed to it and his appeal fell within the scope of the waiver, the court dismissed the appeal. *Id*. at 1295.

Following *Novosel*, the court of appeals held in *Nichols* that an appeal-waiver provision of a plea agreement was unenforceable. The court reasoned as follows:

---

[5] In *Novosel*, the Tenth Circuit relied, in part, on cases applying a well-established rule that the government may withdraw from a plea agreement before it is accepted by the court if no detrimental reliance is shown. *See Mabry v. Johnson*, 467 U.S. 504, 510-11 (1984); *United States v. Kuchinski*, 469 F.3d 853, 858 (9th Cir. 2006).

6

> Under Rule 11 of the Federal Rules of Criminal Procedure, the district court must accept a plea agreement before it becomes binding. *United States v. Novosel*, 481 F.3d 1288, 1292 (10th Cir. 2007). Otherwise, it is "a mere executory agreement which . . . does not deprive an accused of liberty or any other constitutionally protected interest." *Id.* (quoting *Mabry v. Johnson*, 467 U.S. 504, 507 (1984)).
>
> After careful review of the record, we can find no evidence suggesting that the court accepted the agreement . . . .
>
> Because the district court did not accept the plea agreement, we conclude that the waiver of appellate rights under the agreement is not enforceable.

*Nichols*, 267 F. App'x at 792 (footnote omitted).[6] Based on these authorities, Mr. Keogh contends his plea agreement with the government, including the Rule 410 waiver contained in it, never became binding or enforceable.

In contrast, the government contends a plea agreement, like any other contract, takes effect immediately upon execution, particularly where it unambiguously so provides. The government relies on *United States v. Jim*, 786 F.3d 802, 806 (10th Cir. 2015), which concerned a Rule 410 waiver but involved only the question of "whether Jim entered his plea agreement knowingly and voluntarily." *Id.* at 809 (emphasis in original). In *Jim*, the defendant pled guilty under a written plea agreement that contained a Rule 410 waiver, and the magistrate judge who took his plea "deferred deciding whether to accept the *plea agreement* until sentencing." *Id.* at 807 (emphasis in original). The district court later allowed the defendant to withdraw his guilty plea based on an assertion that he did not fully

---

[6] Mr. Keogh also cites *United States v. Kaydahzinne*, 334 F. App'x 144 (10th Cir. 2009) (unpublished), but the court of appeals expressly did "not make a determination on the effectiveness of [the defendant's] appellate waiver" in that case because the parties did not raise the issue and the government did not rely on any waiver. *Id.* at 148.

7

understand the plea agreement and did not realize he was giving up his right to a jury trial. Before allowing him to withdraw the guilty plea, the district court specifically warned the defendant about the Rule 410 waiver in the plea agreement, and he "acknowledged that the Government would be able to use Rule 410 evidence at trial." *Id*. at 808. The defendant still "elected to withdraw his guilty plea and proceed to trial." *Id*.

The district court did not decide whether the defendant knowingly and voluntarily entered into the plea agreement (because he did not challenge the admission of Rule 410 evidence on that ground), but the district court enforced the Rule 410 waiver and allowed the admission of evidence barred by Rule 410. The defendant challenged that ruling on appeal and, under the circumstances, did so by arguing that his plea agreement was not knowing and voluntary and thus the Rule 410 waiver included in it was unenforceable. No party raised, nor did the Tenth Circuit acknowledge, the law regarding formation of a binding plea agreement discussed in *Novosel*.

However, the Tenth Circuit stated the law regarding Rule 410 waivers generally as follows:

> The district court's two decisions, first to allow Jim to withdraw his guilty plea and then to enforce the Rule 410 waiver, are consistent with decisions from other circuits enforcing Rule 410 waivers contained in plea agreements, and consistent with the particular language of those waivers. *See United States v. Nelson*, 732 F.3d 504, 512-13, 516-17 (5th Cir. 2013) (enforcing plea agreement's Rule 410 waiver against a defendant who did not enter a guilty plea as required under the plea agreement, where waiver expressly took effect if the defendant failed to enter the guilty plea) . . . ; *United States v. Washburn*, 728 F.3d 775, 781 (8th Cir. 2013) (holding plea agreement, with its Rule 410 waiver, was binding on defendant once he signed the agreement and Rule 410 waiver remained enforceable, pursuant to its express terms, even though the defendant never entered guilty plea required under that agreement and even though district court never accepted the plea agreement) . . . .

8

> Jim's Rule 410 waiver expressly stated that it took effect at the time his signed the plea agreement. . . . And Jim does not contend that his Rule 410 waiver was not enforceable for the reason that the district court permitted him to withdraw his guilty plea. Indeed, it would make no sense to deny the efficacy of the Rule 410 waiver just because the guilty plea was withdrawn because that would render the waiver largely meaningless and deprive the Government of the benefit of its bargain. The clearly contemplated situation where the Rule 410 waiver would have any usefulness to the Government is precisely this situation – where the defendant failed to carry out his side of the bargain to plead guilty and thereby forced the Government to trial.

*Jim*, 786 F.3d at 809. This passage is dicta, however, because the issue in *Jim* was not the enforceability of the waiver itself but the voluntariness of the plea agreement as a whole.

However, *Jim* seems to endorse the view that a Rule 410 waiver in a plea agreement may be enforced without requiring approval or acceptance of the plea agreement by a district court because the plea agreement was never accepted by the district court in that case. This view is consistent with the weight of authority on the issue, that is, recognizing a defendant's right to exclude Rule 410 evidence is waivable and finding Rule 410 waivers to be fully enforceable if they are knowing and voluntary.[7] Under this view, the question of whether the district judge accepted the plea agreement does not affect the enforceability of the

---

[7] In addition to the Fifth and Eighth Circuit cases cited in *Jim* – *United States v. Washburn*, 728 F.3d 775 (8th Cir. 2013), and *United States v. Nelson*, 732 F.3d 504 (5th Cir. 2013) – other federal appellate courts seem to agree. *See United States v. Elbeblawy*, 899 F.3d 925, 934-35 (11th Cir. 2018) (plea agreement was unambiguous and defendant waived Rule 410 rights by signing it, even though he later changed his mind and refused to plead guilty); *United States v. Stevens*, 455 F. App'x 343, 345-46 (4th Cir. 2011) (defendant waived Rule 410 rights by signing unambiguous plea agreement but then proceeding to trial). Other courts, including the Supreme Court, have enforced Rule 410 waivers in proffer agreements, that is, cases where a waiver was given during negotiations that did not reach a plea agreement. *See United States v. Mezzanatto*, 513 U.S. 196, 210 (1995); *United States v. Velez*, 354 F.3d 190, 196 (2d Cir. 2004); *United States v. Hardwick*, 544 F.3d 565 (3d Cir. 2008); *United States v. Krilich*, 159 F.3d 1020, 1025-26 (7th Cir. 1998); *United States v. Rebbe*, 314 F.3d 402, 407 (9th Cir. 2002); *United States v. Burch*, 156 F.3d 1315, 1321-22 (D.C. Cir. 1998).

Rule 410 waiver, so long as a court determines that the plea agreement was knowingly and voluntarily made.[8]

Although the apparent conflict between *Novosel* and *Jim* is difficult to reconcile, Mr. Keogh cites no case, and the Court's research reveals none, holding that a Rule 410 waiver is unenforceable if the plea agreement containing it was never accepted by the trial judge. According to the Supreme Court: "Rules 410 and 11(e)(6) [now 11(f)] create, in effect, a privilege of the defendant . . . and, like other evidentiary privileges, this one may be waived or varied at the defendant's request." *United States v. Mezzanatto*, 513 U.S. 196, 205 (1995) (internal quotation and citation omitted). The privilege is indistinguishable from "a broad array of constitutional and statutory provisions" that can be waived by a criminal defendant. *See id*. at 200-01 (citing examples). Thus, Mr. Keogh was entitled to waive the protection of Rule 410, as provided by his 2017 plea agreement, if he did so knowingly and voluntarily.

**Conclusion**

Mr. Keogh fails to identify any legal authority holding that a Rule 410 waiver in a plea agreement is unenforceable solely because the agreement was never accepted by the district court. Therefore, the Court declines to recognize such a rule. However, because it is well settled that a Rule 410 waiver is valid and enforceable only if the defendant entered into the plea agreement knowingly and voluntarily, and because Mr. Keogh claims this

---

[8] The decision in *Jim* was based, in part, on a prior Tenth Circuit decision that endorsed the enforcement of Rule 410 waivers in plea agreements. *See United States v. Mitchell*, 633 F.3d 997 (10th Cir. 2011). In that case, the defendant had entered a guilty plea after a Rule 11 colloquy (and was later allowed to withdraw it), so presumably the district court had accepted the plea agreement, although the court of appeals did not indicate that acceptance was a material fact.

10

requirement is not met in his case, the Court will schedule a hearing to determine the voluntariness of Mr. Keogh's 2017 plea agreement with the government.

IT IS THEREFORE ORDERED that an evidentiary hearing limited solely to the issue identified by this Order is set in Courtroom 301 on Thursday, September 12, 2019, at 2:00 p.m.

IT IS SO ORDERED this 29th day of August, 2019.

_____
TIMOTHY D. DeGIUSTI
Chief United States District Judge