IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| -vs- | )   Case No. CR-17-290-D |
| | ) |
| DANIEL WEBSTER KEOGH | ) |
|     a/k/a WEB KEOGH, and | ) |
| DANIELLE KEOGH, | ) |
|     a/k/a DANIELLE E. TRUITT, | ) |
| | ) |
| Defendants. | ) |

## ORDER

This matter is before the Court for disposition of the government's Motion to Find Breach of Plea Agreement and Motion *in Limine* to Pre-Admit Plea Agreement and Petition into Evidence [Doc. No. 32], which is directed solely at Defendant Daniel Webster Keogh a/k/a Web Keogh. Accordingly, all references to "Defendant" in this Order mean Daniel Webster Keogh. The Motion first seeks a determination of whether Defendant breached a written plea agreement that he made in a prior criminal case and so triggered a waiver provision of the agreement that is enforceable in this case. If the waiver is valid, the Motion then seeks a pretrial evidentiary ruling that the plea agreement and inculpatory statements made by Defendant in a petition to enter a guilty plea in the prior case, are admissible against him during the government's case in chief in the jury trial of this case.[1]

---

[1] On the issue of the admissibility of Defendant's inculpatory statements or admissions, co-defendant Danielle Keogh has responded in opposition to the Motion, arguing that the statements should not be admitted in a joint trial due to unfair prejudice under Fed. R. Evid. 403 and constitutional principles announced in *Bruton v. United States*, 391 U.S. 123 (1968), *Crawford v.*

The Motion has been the subject of two prior orders. By Order of August 29, 2019 [Doc. No. 128], the Court determined that a written waiver of Defendant's right under Fed. R. Evid. 410 to exclude statements he made in connection with an unconsummated guilty plea may be enforced if the plea agreement containing the waiver was knowingly and voluntarily made, and that an evidentiary hearing was needed to determine this issue. The Court ruled in the Order of September 25, 2019 [Doc. No. 162], that the government bore the burden of proof to establish the voluntariness of Defendant's plea agreement and that an implied waiver of the attorney-client privilege from Defendant's calling his attorney, Edward Blau, to testify regarding legal advice he gave to Defendant would be strictly limited to the subject matter of Mr. Blau's testimony on direct examination.

An evidentiary hearing was held September 25 and 26, 2019, to determine "whether an August 2017 plea agreement between the government and Defendant Daniel Webster Keogh was knowingly and voluntarily made or, as he alleges, was coerced by undue government pressure and an unfounded threat to indict Defendant's wife if he did not accept the plea offer." *See* 9/25/19 Order at 1. Defendant appeared personally at the hearing with his attorneys, Michael Edney, Samuel Ramer, and Mr. Blau.[2] The government appeared through Assistant United States Attorneys Chris Stephens and McKenzie Anderson. The Court heard the testimony of three witnesses: The government

---

*Washington*, 541 U.S. 36 (2004), and other cases. Mrs. Keogh states an intention in her brief and other court filings to move for severance or separate trials if the Court rules in favor of admission. Thus, the Court finds that a ruling on any evidentiary issues that may arise in a joint trial would be premature.

[2] Other attorneys of record for Defendant were also present.

2

presented the case agent, Special Agent Damon Musick of the United States Department of Agriculture, Office of the Inspector General ("USDA-OIG"); and Defendant presented a psychotherapist, Tamera Sweeton, and his attorney, Mr. Blau. The Court admitted documentary evidence offered by both parties, and heard arguments of counsel.

Based on the parties' briefs and hearing presentations, the Court finds for the reasons set forth below that Defendant knowingly and voluntarily agreed to enter a guilty plea to the criminal charge that now appears in Count 5 of the Superseding Indictment, and that he validly waived the protection of the exclusionary rule of Rule 410.[3] The Court further finds that, if otherwise admissible under the Federal Rules of Evidence, Defendant's inculpatory statements in the plea documents should be not excluded under Rule 403, as argued by Defendant.

## Factual Findings

Defendant currently stands charged by the Superseding Indictment with 21 offenses: Count 1, conspiracy in violation of 18 U.S.C. § 1349 to commit bank fraud in violation of 18 U.S.C. § 1344; Counts 2-4 and 6-10, false statements for the purpose of influencing certain actions of First Pryority Bank and USDA's Rural Development Administration in violation of 18 U.S.C. § 1014; Count 5, false statement to USDA in violation of 18 U.S.C. § 1001(a)(2); Count 12, conspiracy in violation of 18 U.S.C. § 1349 to commit wire fraud

---

[3] The same charge also appeared in Count 5 of the Indictment. While the Motion was pending, and after a resumption of grand jury proceedings that had been suspended in this judicial district under G.O. 20-8 and G.O. 20-10 due to the COVID-19 pandemic, a grand jury issued the Superseding Indictment on June 3, 2020. The grand jury made changes to the Indictment that do not affect the instant Motion.

3

in violation of 18 U.S.C. § 1343; Counts 13-19, wire fraud in violation of 18 U.S.C. § 1343; and Counts 20-22, theft from an organization receiving federal funds in violation of 18 U.S.C. § 666(a)(1)(A).  Defendant allegedly committed the offenses while acting as the laboratory director for Oklahoma State University–University Multispectral Laboratories, LLC ("OSU-UML") and as a controlling officer of several businesses.  Generally, his alleged misconduct involved either fraudulently obtaining loan funds guaranteed by USDA's Rural Development Administration or diverting federal payments made under military contracts between OSU-UML and the United States Department of Defense.

At the hearing, the government established through documentary evidence and the testimony of Agent Musick a timeline of events in the underlying law enforcement investigation of the case.  USDA-OIG became involved in the investigation in January 2014.  Defendant, through counsel, first received a target letter in April 2015.  Beginning in May 2015, federal agents and the government's attorneys began a series of meetings with Defendant and his attorneys, primarily regarding documents provided by USDA, First Pryority Bank, and Defendant.  The government shared copies of discovery materials with Defendant and his attorneys, including reports of his interview statements.  The last production before plea negotiations began occurred in September 2016.

In July 2017, the government proposed to resolve the investigation by charging Defendant with a single violation of 18 U.S.C. § 1001(a)(2).  The proposed Information alleged that Defendant made a false statement to USDA on December 29, 2010, in loan closing documents for a $3.2 million loan from First Pryority Bank to one of his companies, Triton Scientific, LLC ("Triton"), that was guaranteed by USDA.  Specifically, the

4

Information alleged that Defendant falsely represented the purpose of the loan was to purchase machinery and equipment for Triton when Defendant actually intended to use the loan proceeds to fund an electromechanical battery project of a different company, EMB Energy, LLC, that was the subject of a cooperative research and development agreement. These same allegations appear in the Indictment and the Superseding Indictment, and an identical charge constitutes Count 5.[4]  *Compare* Info. [Govt's Ex. 16] ¶¶ 4-9 *with* Indictment [Doc. No. 1] and Superseding Indictment [Doc. No. 228] ¶¶ 19.D, 20.B-C, 20.E, 20.H-J, 20.S; *compare* Info. ¶ 11 *with* Indictment and Superseding Indictment ¶ 28.[5] The proposed plea agreement provided for an order of restitution in the amount of approximately $3 million to OSU-UML, apparently based on Defendant's alleged conduct of diverting funds from federal defense contracts while employed at OSU-UML from 2010 through December 2012, which were possible charges encompassed by the plea agreement. *See* Plea Agreement [Govt's Ex. 17] ¶¶ 4, 14.[6]

Defendant's wife, Danielle Keogh, did not receive a target letter and was not interviewed. However, due to her position as an officer of Defendant's companies and her

---

[4] *See supra* note 3.

[5] The Information filed in August 2017 contained an added paragraph 10, which resulted in the charge appearing in paragraph 12. *See United States v. Keogh*, Case No. CR-17-191-M, Info. (W.D. Okla. Aug. 28, 2017) [Govt's Ex. 33]; *see also* 8/24/17 Letter from Stephens to Blau [Govt's Ex. 20].

[6] The government's written offer dated July 25, 2017, consists of a cover letter, the proposed Information, a proposed plea agreement, and a plea supplement. Copies of these materials, other than the supplement, appear in the record as the government's hearing exhibits, Nos. 15-17. The documents appear in other places in the record, and were included in Defendant's notebook of exhibits for the hearing (Def.'s Ex. 1). For ease of discussion, the Court cites the exhibits admitted at the hearing.

5

involvement in financial operations, Mrs. Keogh's name appears in numerous discovery materials, including email communications regarding loan and financial documents. During the hearing, the government presented over twenty exhibits [Gov't Exs. 100-110 and 200-210] that highlight Mrs. Keogh's involvement in conduct related to the charged offenses. Agent Musick testified that the government had all of these documents, and 95 percent of the government's investigation was done, by July 2017.[7] Although only Defendant was interviewed, he identified Mrs. Keogh as the author of certain documents, and investigators had a transcript of Mrs. Keogh's deposition testimony in related civil litigation. When making the initial plea offer to Defendant, the government set a deadline of Friday, August 18, 2017, for acceptance; the letter expressly stated that if charges were presented to a federal grand jury "we likely will seek charges against Danielle Keogh too." *See* 7/25/17 Letter from Stephens to Blau [Gov't Ex. 15] at 2.[8]

The written plea offer was delivered to Mr. Blau in person, along with a notebook of documents. During the following days and weeks, other documents and materials were provided or offered, and Mr. Blau reported having meetings with Defendant and advising Mrs. Keogh to retain separate counsel. A prosecutor, Chris Stephens, subsequently met with Mrs. Keogh's counsel, Ken Stoner, and provided him with discovery materials and

---

[7] The remaining five percent was completed in late 2017 after Defendant did not enter a guilty plea.

[8] This possibility had been raised in an earlier email communication to Mr. Blau in which Mr. Stephens expressed a "need to know whether your client is interested to resolve the case by mid-August, so we can make final charging decisions – for [Defendant] and Danielle Keogh . . . – in September. *See* Email from Stephens to Blau dated July 19, 2017 [Govt's Ex. 14].

specific documents. Mr. Stephens had additional meetings with Mr. Stoner and Mr. Blau, and as a result, the government agreed to modify the plea agreement to add a sentencing concession and to extend the deadline for acceptance to August 25, 2017.[9] Mr. Blau testified that a second extension was later granted, extending the deadline until August 28, 2017. *See also* Blau Decl. [Doc. No. 37] ¶ 7.

On Sunday, August 27, 2017, Mr. Blau delivered to Mr. Stephens the documents executed by Defendant: the Plea Agreement [Govt's Ex. 35]; a completed Petition to Enter Plea of Guilty [Govt's Ex. 34] ("Plea Petition"); and the Plea Supplement [Govt's Ex. 36]. *See* Blau Decl. [Doc. No. 37] ¶ 8. The documents were countersigned by the government's attorneys on August 28, 2017, and the Information was filed the same day. *See United States v. Keogh*, Case No. CR-17-191-M, Info. (W.D. Okla. Aug. 28, 2017). The evidence shows no direct contact between any prosecutor and Defendant during plea negotiations. Defendant received legal advice from multiple experienced attorneys, but Mr. Blau testified that he was Defendant's primary attorney regarding the Plea Agreement.

The Plea Agreement provides a number of waivers and obligations of the parties, including the waiver that is the subject of the government's Motion (hereafter, "Rule 410 Waiver").[10] Similarly, the Plea Petition acknowledges the constitutional rights that are

---

[9] A provision was added to the plea agreement stating that the government would not object to Defendant's request for a downward variance from the guideline range computed under the Sentencing Guidelines. *See* 8/24/17 Letter from Stephens to Blau [Govt's Ex. 30]; *see also* Plea Agreement [Doc. No. 32-1] at 5, ¶ 7(b).

[10] Paragraph 13 of the Plea Agreement containing the waiver is quoted in full in the August 25 Order [Doc. No. 128] at page 3, and will not be repeated here. *See also* Govt's Ex. 34, at 10-11.

waived, sentencing consequences and considerations, and requirements of voluntariness to enter a guilty plea, specifically in the context of a plea agreement. The completed form signed by Defendant provides the following pertinent information: he was then 47 years old; his education included a doctorate degree; he had not received treatment for drug or alcohol addiction but had been treated for a mental or emotional condition; he was not taking any prescribed medication and had not consumed any substance that impaired his ability to think clearly or understand the petition; he had enough time to talk to his attorney, Mr. Blau; he understood the waivers and possible consequences of pleading guilty; the guilty plea and waivers were made voluntarily and completely of his own free choice; he had read the plea agreement and discussed it with his attorney; all of its terms were explained and understood; he made the plea agreement because it was "in the best interest of [him] and [his] family" (Plea Pet. at 10, ¶ 40(c)); his attorney had discussed all the questions and answers in the petition and he understood them; he wanted to plead guilty; he was guilty; and the facts describing his offense appear in a handwritten statement.

The Plea Petition includes a written verification that Defendant signed it under penalty of perjury in the presence of his attorney on August 27, 2017, and a certification by Mr. Blau (similarly signed in Defendant's presence after discussing its contents) that Defendant's statements and declarations were true to the best of Mr. Blau's knowledge and belief, and that Defendant's guilty plea was consistent with Mr. Blau's understanding of the facts and his advice and was knowingly and voluntarily made.

Mr. Blau reaffirmed in his hearing testimony the accuracy of these representations. Mr. Blau testified that he and Defendant specifically discussed the Rule 410 Waiver.

8

Although Mr. Blau's testimony on the point was not entirely clear, he testified that he advised Defendant consistent with his understanding (and defense arguments in this case) that the waiver was not valid until a district judge accepted Defendant's guilty plea at a plea hearing. Mr. Blau also testified that he advised Defendant consistent with the last sentence of the Rule 410 Waiver, which stated that "Defendant knowingly and voluntarily waives the rights described in this paragraph as of the time he signs this Agreement." *See* Plea Agreement at 11.

The district judge assigned to Defendant's first case, the Honorable Vicki Miles-LaGrange, was unable to conduct a hearing on his Plea Petition. On two occasions in September and October, 2017, Defendant was scheduled to appear before Judge Miles-LaGrange for a change of plea hearing, but each time, Defendant through counsel requested a continuance of the hearing. Immediately before the first hearing on September 22, 2017, Judge Miles-LaGrange held an in-chambers conference with counsel for the parties, and Mr. Blau explained a need to resolve issues that had arisen in a related civil suit brought by First Pryority Bank. Mr. Blau affirmed that Defendant "fully intend[ed] to go forward with the plea," but Defendant and his counsel (primarily his civil attorneys) needed "a little bit more time." *See* 9/22/17 Tr. [Doc. No. 79-1] at 5, 6.

The second scheduled hearing on October 25, 2017, was aborted upon an oral motion of Defendant to continue the hearing pending additional factual discovery taking place in the civil case. For the first time, Mr. Blau expressed hesitation about Defendant's pleading guilty to the charged offense due to the deposition testimony of a key witness, and he stated that other depositions to be taken in the civil case might affect the defense's

9

position regarding the factual basis for a guilty plea. *See* 10/25/17 Tr. [Doc. No. 79-2] at 3-4. The government reluctantly agreed to the continuance with the understanding that if a hearing did not occur after a second period of delay, the case would be dismissed so the prosecution could proceed by seeking an indictment. *Id.* at 7. On the third hearing date, December 11, 2017, Defendant asked that it be stricken, which request was granted, and the government then moved to dismiss the Information, which also was granted. The case was promptly presented to a federal grand jury, which issued the Indictment on December 13, 2017.

Unknown to the government at the relevant time – and raised for the first time in connection with the evidentiary hearing, but not in any briefs regarding the Motion – Defendant presented evidence that he was experiencing mental health issues before and after the plea papers were signed. A licensed professional counselor, Ms. Sweeton, testified that she began treating Defendant in 2016 for anxiety and depression through weekly clinical sessions, and that she became his life coach in July 2017. In this role, she did not provide psychotherapeutic treatment but, instead, assisted Defendant during August 2017 in managing high levels of mental stress. Ms. Sweeton testified, and her coaching notes reflect, that Defendant reported experiencing confusion, memory lapses, physical symptoms, and distorted thoughts. She advised him not to make major life decisions during that time; she testified that, although he was not taking medication, he was not in a state of mind to execute legal documents. Somewhat at odds with this testimony, Ms. Sweeton's notes indicate that coaching goals included life changes such as relocating from Oklahoma

and developing a new business or profession. *See* Def.'s Ex. 11. Her notes also show that Defendant continued to operate his company. *See* Def.'s Ex. 12.

Defendant also presented the Declaration of Dr. Ester Cobb, M.D. [Def.'s Ex. 16], a family physician who treated him in 2015. Dr. Cobb states that Defendant was taking an over-the-counter supplement containing iodine and a prescription medication that, depending on dosage and residual effects, could affect cognitive abilities. Dr. Cobb does not provide any facts from which to infer that Defendant actually suffered any such effect in July or August 2017, and thus, the Court finds no relevance in the information provided by Dr. Cobb.

## Legal Analysis and Conclusions

The Court convened an evidentiary hearing to address a limited issue raised by the Motion and the parties' briefs of whether Defendant knowingly and voluntarily entered into the Plea Agreement or was coerced by time pressure and a threat to indict his wife. *See supra* at 2 (quoting 9/25/19 Order at 1).[11] Defendant presented argument and evidence at the hearing, however, designed to expand the voluntariness issue to include additional reasons – that he received confusing legal advice from Mr. Blau and he was in a distressed mental state. These newly asserted reasons raise a preliminary legal question of whether circumstances unknown to the government can affect the validity of a plea agreement.

---

[11] The Court identified this issue based on the arguments Defendant presented in his briefs. As one representative example, he argued: "The Government unduly coerced the Defendant to enter into the Plea Agreement by giving him an impossible choice with a rapidly ticking countdown clock: enter into the plea or your wife will be arrested and indicted." *See* Def.'s Resp. Br. [Doc. No. 39] at 17.

11

Defendant provides no legal authority that such circumstances provide a cognizable basis to invalidate the Plea Agreement. Assuming, without deciding, that the new reasons are cognizable, the Court finds that none of Defendant's asserted reasons for invalidity have merit. Further, the Court finds that Defendant's objections to admission of his inculpatory statements should be overruled.

A.  **Voluntariness of Defendant's Plea Agreement**

In determining whether the Plea Agreement was knowing and voluntary, the Court first looks to contract principles. *See United States v. Rollings*, 751 F.3d 1183, 1189 (10th Cir. 2014) (citing *United States v. Hahn*, 359 F.3d 1315, 1324-25 (10th Cir. 2004) (en banc)). Under these principles, the Plea Agreement "would not be entered into with the requisite knowledge or voluntariness if it resulted from such influences as undue coercion or ineffective assistance of counsel." *Id*. In this case, the only alleged coercion arises from the pressure applied by the prosecutors, discussed *infra*. Regarding counsel, the evidence shows that Defendant had abundant legal advice from multiple experienced attorneys in considering whether to enter into the Plea Agreement and that he had ample opportunity over the course of many days, if not weeks, to consider his decision.

Defendant has raised a concern about Mr. Blau's advice regarding the Plea Agreement. However, the focus of Defendant's argument is directed solely at the Rule 410 Waiver itself. On this limited point, there is no evidence that Defendant – an intelligent and well-educated person – was unsure about anything other than the point at which the Rule 410 Waiver took effect. The law is clear that "a defendant need not know with specificity the results he forfeits before his waiver is valid." *See Hahn*, 359 F.3d at 1327

12

(quoting *United States v. Ruiz*, 536 U.S. 622, 629-30 (2002) ("the law ordinarily considers a waiver knowing, intelligent, and sufficiently aware if the defendant fully understands the nature of the right and how it would likely apply *in general* in the circumstances – even though the defendant may not know the *specific detailed* consequences of invoking it") (emphasis in original).[12]  From the face of the Plea Petition and the Plea Agreement, the testimony of Mr. Blau, and other documentary evidence, the Court finds that Defendant understood and voluntarily entered into the Plea Agreement and made an enforceable Rule 410 Waiver.

As to Defendant's mental state, Defendant did not raise any issue of a possible mental impairment in his Motion but, instead, waited until the eleventh hour.  Defendant first presented at the evidentiary hearing factual information and arguments of counsel regarding his mental state in August 2017.  Even under this new theory, Defendant does not contend he was mentally impaired such that he was incompetent or that he was incapable of entering into a binding contract; the only evidence is that his life coach counseled against making serious decisions.[13]  There is no evidence that Defendant ceased operating his companies or conducting other business or legal affairs during this time period.  Thus, the Court rejects Defendant's contention that he was prevented by mental distress from voluntarily entering into the Plea Agreement.

---

[12] By analogy, it is well settled that incorrect legal advice regarding an important matter, such as a sentencing calculation, is insufficient to invalidate a guilty plea.  *See United States v. Gordon*, 4 F.3d 1567, 1570 (10th Cir. 1993).

[13] Notably, at the same time that Ms. Sweeton was giving this advice, she was also counseling Defendant about decisions such as relocating his family or making professional changes.

Next, turning to constitutional principles, the Due Process Clause erects another possible barrier to the use of a defendant's admission of criminal conduct or inculpatory statements. *See J.D.B. v. North Carolina*, 564 U.S. 261, 280 (2011). "[W]hen the government obtains incriminating statements through acts, threats, or promises which cause the defendant's will to be overborne, it violates the defendant's [due process] rights and the statements are inadmissible . . . ." *United States v. Lopez*, 437 F.3d 1059, 1063 (10th Cir. 2006) (internal quotations omitted). A defendant's confession or statements must be the product of "an essentially free and unconstrained choice." *Lopez*, 437 F.3d at 1063 (internal quotations omitted).

A determination of voluntariness must be based on "the totality of all the surrounding circumstances, [including] both the characteristics of the [defendant] and the details of the interrogation." *Sharp v. Rohling*, 793 F.3d 1216, 1233 (10th Cir. 2015) (quotations omitted); *see United States v. Young*, 964 F.3d 938, 943 (10th Cir. 2020). The Supreme Court has identified several relevant "factors for assessing the voluntariness of a statement: the [defendant's] age, education level, whether the [defendant] was advised of his or her constitutional rights, the length of [any] detention, the nature of the questioning, and any physical punishment such as deprivation of food or sleep." *Sharp*, 793 F.3d at 1233 (citing *Schneckloth v. Bustamonte*, 412 U.S. 218, 226 (1973)). "The totality of the circumstances test . . . is a case-specific inquiry where the importance of any given factor can vary in each situation." *Id.* However, some coercive conduct by a government actor that overcomes the defendant's will and impairs his capacity for self-determination is required. *See Young*, 964 F.3d at 943; *see also Colorado v. Connelly*, 479 U.S. 157, 167

14

(1986) ("coercive police activity is a necessary predicate to the finding that a confession is not 'voluntary'"). A finding that the defendant's will was overborne may also be based on the government's "exploiting a weakness or condition known to exist." *See United States v. Robertson*, 19 F.3d 1318, 1321 (10th Cir. 1994).

In this case, considering both the characteristics of Defendant and the context in which his Plea Agreement and inculpatory statements were made, the Court finds that Defendant's conduct and statements were voluntary. The only governmental conduct of which Defendant complains are the time pressure imposed by the prosecutors' deadline to accept or reject the plea offer and an allegedly unfounded threat to indict Defendant's wife. The Court is not persuaded by these arguments, viewed individually and collectively.

The time pressure alleged by Defendant was largely a creature of his own making. From the time the plea papers were first presented – along with supporting documents and an offer to provide additional information – through the final deadline, Defendant was given more than a month to review and discuss the plea offer with his attorneys. The government cannot be faulted for adhering to the deadline or giving only short extensions; Defendant could not reasonably expect to dictate the terms of the government's plea offer. Further, Defendant and his counsel were not forced by the government to meet and confer over a single weekend or in a single day. To the contrary, the government simply set a firm deadline. Under these circumstances, the Court finds no coercive conduct by the

government that would undermine the voluntariness of Defendant's decision to enter into the Plea Agreement and to make incriminating statements in the Plea Petition.[14]

As to the alleged threat to indict Mrs. Keogh, the government presented a strong case that the original law enforcement investigation into Defendant's conduct uncovered incriminating evidence against her. The ease and quickness with which a grand jury returned an indictment against Mrs. Keogh when presented with some of the evidence demonstrates the existence of probable cause to believe she had engaged in criminal conduct. The Court easily finds that probable cause existed at the time Defendant was given the opportunity to resolve the matter with a guilty plea. Thus, the Court finds no bad faith conduct by the prosecutors in informing Defendant that the government intended to pursue criminal charges against his wife if he did not enter into the Plea Agreement. This was not an improper threat but a factual statement about the consequences of his decision.

For all of these reasons, the Court finds that Defendant knowingly and voluntarily entered into the Plea Agreement and that the Rule 410 Waiver is binding and enforceable.

## B.     Admissibility as Trial Evidence

By its Motion, the government proposes that the Plea Agreement and the Plea Petition that Defendant signed should be admitted into evidence during its case in chief. Although the government does not specify a theory of admissibility, it plainly wants the jury to see several inculpatory statements that appear in the documents. For example, the

---

[14] Defendant's evidence that he was in a fragile mental state is not a circumstance that would show the incriminating statements in the Plea Petition were involuntary in the constitutional sense; the government was not aware of this information at the time and so could not possibly have attempted to exploit it.

16

Plea Petition contains a handwritten statement of a factual basis for Defendant's guilty plea to what is now Count 5.[15] However, the documents also contain much information that has little, if any, relevance to a trial of the charges in the Superseding Indictment. For example, they discuss constitutional protections that are lost when a defendant pleads guilty, issues related to sentencing, restitution and forfeiture, and other impertinent matters that could be troublesome if they were injected into the jury's deliberations.[16] The Court also is not sure what witness the government might use to authenticate and lay a proper foundation for the documents. The Plea Agreement was not signed under penalty of perjury and, thus, is not self-authenticating. Regarding the Plea Petition, only Defendant or his attorneys know who completed the document and wrote the handwritten factual statement.

However, Defendant asserts in his response brief only an objection to admitting the plea documents at trial based on Fed. R. Evid. 403 and, specifically, a danger of unfair prejudice and jury confusion.[17] *See* Def.'s Resp. Br. at 21, 22. Thus, the Court addresses

---

[15] The government argues in its reply brief that Defendant's "statements in his Plea Agreement and Plea Petition are highly relevant evidence for Count 5 of the Indictment, which . . . substantially tracks the one-count Information." *See* Reply Br. [Doc. No. 46] at 13-14. The government contends Defendant's "representations and sworn statements from plea documents are akin to any defendant's incriminating statements for a charged crime." *Id*. at 14.

[16] The government's argument in response to Defendant's evidentiary objection provides little insight into how it might propose to deal with irrelevant and perhaps inadmissible parts of the documents. The government argues only that it could tender at trial "an appropriate limiting instruction that addresses any concerns of spillover to other counts or to Mrs. Keogh." *See* Reply Br. at 14. The government does not address the inadmissible statements that raise greater concern.

[17] In pertinent part, Rule 403 provides: "The court may exclude relevant evidence if its probative value is substantially outweighed by a danger of . . . unfair prejudice, confusing the issues, [or] misleading the jury . . . ." *See* Fed. R. Evid. 403.

only the issue of the admissibility of Defendant's inculpatory statements under Rule 403, and makes the following determination.

Under Rule 403, "damage to a defendant's case is not a basis for excluding probative evidence" because "[e]vidence that is highly probative invariably will be prejudicial to the defense." *United States v. Grimmond*, 137 F.3d 823, 833 (4th Cir. 1998); *see also* 2 Jack B. Weinstein & Margaret A. Berger, *Weinstein's Federal Evidence* § 404.21(3)(b) (2d ed. 2002) ("[u]nfair prejudice under Rule 403 does not mean the damage to a defendant's case that results from the legitimate probative force of the evidence") (emphasis omitted). "Rule 403 only requires suppression of evidence that results in unfair prejudice – prejudice that damages an opponent for reasons other than its probative value, for instance, an appeal to emotion, and only when that unfair prejudice substantially outweighs the probative value of the evidence." *United States v. Mohr*, 318 F.3d 613, 619-20 (4th Cir. 2003) (internal quotation and emphasis omitted); *see United States v. Irving*, 665 F.3d 1184, 1213-14 (10th Cir. 2011) (relevant evidence is unfairly prejudicial only "if it makes a conviction more likely because it provokes an emotional response in the jury or otherwise tends to affect adversely the jury's attitude toward the defendant wholly apart from its judgment as to his guilt or innocence") (internal quotation omitted).

Unfair prejudice "speaks to the capacity of some concededly relevant evidence to lure the factfinder into declaring guilt on a ground different from proof specific to the offense charged." *Old Chief v. United States*, 519 U.S. 172, 180 (1997); *see United States*

*v. Silva*, 889 F.3d 704, 712 (10th Cir. 2018), *cert. denied*, 139 S. Ct. 1319 (2019).[18]  Where "the evidence sought to be excluded under Rule 403 is concededly probative, the balance under Rule 403 should be struck in favor of admissibility, and evidence should be excluded only sparingly."  *United States v. Aramony*, 88 F.3d 1369, 1378 (4th Cir. 1996); *see United States v. Rodriguez*, 192 F.3d 946, 949 (10th Cir. 1999) (exclusion of evidence under "Rule 403 is an extraordinary remedy and should be used sparingly") (internal quotations omitted).  As explained by the Tenth Circuit:

> "[U]nfair prejudice does more than damage the Defendant's position at trial.  Indeed, relevant evidence of a crime which the government must introduce to prove its case is by its nature detrimental to a defendant who asserts that he is not guilty of the charged offense.  In the Rule 403 context, however, "[e]vidence is unfairly prejudicial if it makes a conviction more likely because it provokes an emotional response in the jury or otherwise tends to affect adversely the jury's attitude toward the defendant *wholly apart* from its judgment as to his guilt or innocense of the crime charged." *Rodriguez*, 192 F.3d at 951 (quotation omitted) (emphasis added).  Even if this type of prejudice is found, it must *substantially* outweigh the probative value of the evidence in order to be excluded under Rule 403.

*United States v. Tan*, 254 F.3d 1204, 1211-12 (10th Cir. 2001) (emphasis in original) (footnote omitted).

Upon consideration, the Court finds that although the inculpatory statements made by Defendant may be prejudicial to him, they are not unfairly prejudicial.  Obviously, inculpatory statements are always prejudicial to a defendant in the sense that they damage his defense.  However, Rule 403 is concerned only with unfair prejudice resulting from the

---

[18]  The Advisory Committee's notes to the 1972 proposed rules state regarding Rule 403: "'Unfair prejudice' within its context means an undue tendency to suggest [a] decision on an improper basis, commonly, though not necessarily, an emotional one."

19

"capacity of some concededly relevant evidence to lure the factfinder into declaring guilt on a ground different from proof specific to the offense charged." *See Old Chief*, 519 U.S. at 180. No risk of unfair prejudice exists in this case because the inculpatory statements were made in support of a plea agreement and for presentation in a plea proceeding under Fed. R. Crim. P. 11 that were specifically directed at one of the charges contained in the Superseding Indictment. The statements will not excite the emotions of jurors and lure them into convicting Defendant on a ground irrelevant to the charges against him.

In summary, Rule 403 permits the exclusion of relevant evidence when its probative value is substantially outweighed by the danger of unfair prejudice. Defendant's inculpatory statements are probative and are not unfairly prejudicial. Therefore, if properly presented in accordance with the Federal Rules of Evidence, the statements should not be excluded under Rule 403.

IT IS THEREFORE ORDERED that the government's Motion to Find Breach of Plea Agreement and Motion *in Limine* to Pre-Admit Plea Agreement and Petition into Evidence [Doc. No. 32] is GRANTED subject to the conditions set forth herein.

IT IS SO ORDERED this 14th day of September, 2020.

TIMOTHY D. DeGIUSTI
Chief United States District Judge