IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| -vs- ) | Case No. CR-17-290-D |
| ) | |
| DANIEL WEBSTER KEOGH ) | |
| a/k/a WEB KEOUGH, and ) | |
| DANIELLE KEOGH, ) | |
| a/k/a DANIELLE E. TRUITT, ) | |
| ) | |
| Defendants. ) | |

**O R D E R**

Before the Court is the United States' Consolidated Motion in Limine [Doc. No. 121]. Both Defendants have filed Responses [Doc. Nos. 149 and 156] in opposition to the Motion.[1] Also, all parties have filed Supplemental Briefs [Doc. Nos. 210, 217 and 218] as permitted by the Court.[2] The Motion is thus fully briefed and ripe for decision.

**Background**

Defendants stand charged in the Indictment [Doc. No. 1] and now the Superseding Indictment [Doc. No. 228] with engaging in two separate criminal conspiracies in violation of 18 U.S.C. § 1349: Count 1, a conspiracy to commit bank fraud in violation of 18 U.S.C. § 1344; and Count 12, a conspiracy to commit wire fraud in violation of 18 U.S.C. § 1343.

---

[1] Defendant Danielle Keogh's public filing was redacted to prevent disclosure of defense strategy; an unredacted version was received by the Court *in camera*.

[2] By Order of April 1, 2020 [Doc. No. 225], the Court ruled that Defendant Danielle Keough's Motion to Strike United States' Supplemental Brief [Doc. No. 217] would be considered as a response brief.

Related to the alleged bank fraud conspiracy, Defendants face multiple charges in Counts 2-4 and 6-11 of making false statements and willfully overvaluing property to influence loan decisions by a financial institution, First Pryority Bank, and a guarantor, the Rural Development Administration, in violation of 18 U.S.C. § 1014.[3] The object of the conspiracy and the focus of the statements was a $3.2 million loan to Triton Scientific, LLC ("Triton"), a limited liability company controlled by Mr. Keogh as president and chief executive officer and Mrs. Keogh as director of finance.[4] Count 5 charges Mr. Keogh with making a false statement in a matter within the jurisdiction of the United States Department of Agriculture ("USDA") by misrepresenting the loan's purpose in violation of 18 U.S.C. § 1001(a)(2).

Related to the alleged wire fraud conspiracy, Defendants are charged with multiple offenses of wire fraud (Mr. Keogh, Counts 13-19 and Mrs. Keogh, Counts 14-15 of the Superseding Indictment) in violation of 18 U.S.C. § 1343.  Generally, the alleged fraud involved Defendants' diversion of federal payments under contracts between Oklahoma State University–University Multispectral Laboratories, LLC ("OSU-UML") and the United States Department of Defense ("DoD") to Defendants' personal businesses and other uses.  Defendants were able to accomplish the alleged fraud because Triton operated

---

[3] Specifically, Counts 2 through 4 allege that Mr. Keogh made false statements to obtain approval of a loan.  Counts 6 through 10 allege that Defendants made false statements to obtain loan advances and to maintain a lending relationship.  Count 11 alleges Mrs. Keogh made a false statement to influence the bank to renew a revolving line of credit.

[4] Triton was owned by The Keogh Group, LLC, a limited liability company also controlled by Mr. Keogh as president and CEO with Mrs. Keogh as chief financial officer.

and managed OSU-UML.  One subcontractor on the DoD contracts was Commuter Air Technology, Inc. ("CAT"), which provided military support services doing surveillance and reconnaissance work with special-mission aircraft. Additional facts regarding the alleged offenses can be found in the Order of May 7, 2021, denying motions to dismiss the charges.  *See* 5/7/21 Order [Doc. No. 265] at 12-14.

Finally, Mr. Keogh is charged in Counts 20-22 of the Superseding Indictment with theft from an organization receiving federal funds in violation of 18 U.S.C. § 666(a)(1)(A). Specifically, Mr. Keogh allegedly took money from OSU-UML on three occasions in September 2012 while serving as its laboratory director.

**Government's Motion**

The government seeks a determination that four categories of evidence are inadmissible:  settlement agreements and dispositions of civil litigation related to the alleged offense conduct;[5] charging decisions regarding third parties; allegations of lender negligence or fault; and references to potential punishment or criminal penalties.  The primary focus of the Motion is the exclusion of settlement agreements and civil judgments as inadmissible hearsay under Fed. R. Evid. 802, barred by Rule 408, and likely to cause unfair prejudice and confusion under the balancing test of Rule 403.  Copies of some of these documents

---

[5]  Somewhat inconsistently, the government purports to reserve the right to later move to admit evidence of Defendants' settlement agreement with OSU-UML.  Also, the government initially asserted in the Motion that its arguments do not apply to a settlement agreement between OSU-UML and the United States (Mot., Ex. 8 [Doc. No. 121-8]) and this agreement is admissible. Subsequently, however, the government reversed course in its supplemental brief and argued that all civil settlements and dispositions should be excluded "to avoid distractions and time-consuming sideshows that would confuse the jury."  *See* Pl.'s Suppl. Br. [Doc. No. 210] at 3.

have been submitted. *See* Pl.'s Mot., Exs. 1-7 [Doc. Nos. 121-1 to 121-7]; Pl.'s Suppl. Br., Ex. 1 [Doc. No. 211] (under seal). As to the other categories of evidence, the government's sole ground for exclusion is Rule 403.

### A. Settlement Agreements and Civil Judgments or Dispositions

After full briefing, the government takes the position that all evidence of settlement agreements, civil judgments, and dismissals of civil litigation related to the allegations in this case should be excluded. Defendants generally oppose this position, except to agree that the settlement agreement between OSU-UML and the United States should not be admitted. Mrs. Keogh's arguments are more specific. She proposes to admit two settlement agreements involving the law firm of Squire Sanders (US) LLP (now Squire Patton Boggs (US) LLP) – one with OSU-UML and one with Defendants and others – and an agreed dismissal of a civil action brought by First Pryority Bank against Defendants and others regarding the Triton loan. Defendants argue that these documents do not constitute hearsay, that the settlement agreements show both OSU-UML and Mr. Keogh were victims of a fraudulent scheme perpetrated by others, that the dismissal shows Defendants did not make any misrepresentations to First Pryority Bank, and that the probative value of these materials is not substantially outweighed by any risk of unfair prejudice or jury confusion, which can be minimized with appropriate cautionary instructions.

After examination of the documents that Defendants propose to admit and careful consideration of the parties' arguments, the Court finds that no settlement agreement or dispositional document should be admitted as an exhibit or through the examination of witnesses. Defendants wish to argue inferences from the settlement agreements and from

a dismissal of First Pryority Bank's civil action that are not reasonably drawn from the documents and, instead, would create an unwarranted distraction and evidentiary detour from the allegations and issues to be decided.

First, the arguments that Defendants wish to make – that individuals associated with Squire Sanders, rather than Mr. Keogh, were responsible for defrauding OSU-UML and that Mr. Keogh did not intent to defraud First Pryority Bank – are not supported by the settlement agreements or from First Pryority Bank's voluntary dismissal of its case against Defendants and others. The settlement agreements expressly disclaim any admission of liability or wrongdoing; they do not explain Squire Sanders' exposure or why it agreed to make payments to OSU-UML and others that bear no relationship to the amounts allegedly taken from OSU-UML by wire transfers to accounts controlled by one of the firm's attorneys (totaling $1,675,000).[6] The dismissal document says nothing about why First Pryority Bank declined to go forward with its case against multiple defendants (including other individuals). An extended examination of witnesses would be needed to place the documents in context and explain any inferences that could reasonably be made.

Second, the probative value of the settlement agreements, according to Defendants, is that they show two individuals associated with Squire Sanders defrauded Mr. Keogh, as

---

[6] Both settlement agreements to which Squire Sanders was a party expressly recite the parties' purpose to avoid protracted, expensive, and complex future proceedings that would involve substantial uncertainties. The agreements provided for Squire Sanders to pay OSU-UML the same amount ($875,000) as Mr. Keogh's settlement obligation to OSU-UML, which resulted in a judgment in favor of OSU-UML against Mr. Keogh and the Keogh Group in that amount. The settlement agreement among Squire Sanders and Defendants (and their business entities) required Squire Sanders to pay a substantially greater amount to Mr. Keogh and the Keogh Group, again without explanation of the amount.

5

well as OSU-UML, and that Mr. Keogh did not conspire with the individuals or intend to defraud OSU-UML. The documents alone, however, prove none of these things. Further, Defendants are proceeding to trial under the Superseding Indictment, which does not allege that the individuals associated with Squire Sanders were coconspirators in the wire fraud conspiracy with which Defendants are charged. Whatever part the individuals' conduct may have played in allegedly causing Mr. Keogh to direct payments from OSU-UML's account to their accounts or to provide a lulling letter to CAT regarding future funds, their conduct would not absolve Mr. Keogh of responsibility for his alleged conduct or negate his alleged intent in causing OSU-UML to make the transfers to the individuals' accounts. More importantly, Mr. Keogh can make his intended argument that he was duped by other individuals without introducing the Squire Sanders' settlement agreements.

Similarly, Defendants contend the probative value of First Pryority Bank's dismissal of its civil action regarding the $3.2 million loan to Triton is to show a lack of evidence that Mr. Keogh made false statements to obtain the loan. This argument is based almost solely on the timing of the dismissal, which allegedly occurred on the eve of trial after extensive discovery, rather than the dismissal document itself or the fact of dismissal. Further, Defendants primarily base their argument on alleged evidence of wrongdoing by others associated with First Pryority Bank. Again, such evidence does not absolve Mr. Keogh of any alleged misconduct or negate his alleged intent in obtaining the loan.

Finally, against the minimal probative value of the settlement agreements and dispositional document, the Court must balance under Rule 403 the considerable amount of trial time and witness testimony that would be required to explain the documents to lay

6

persons, and must also balance the considerable risk of confusing the issues and misleading the jury. Under the circumstances, the Court finds any probative value of the civil settlement and dismissal documents that Defendants propose to introduce is greatly outweighed by the danger of confusing the issues, misleading the jury, causing undue delay, and wasting time in the presentation of evidence. This criminal case is already extremely complex and document-intensive, and will consume a substantial amount of judicial resources during a time when those resources are severely taxed by crowded dockets and safety protocols needed to conduct jury trials during a pandemic. In the Court's judgment, expanding the evidence in the way that Defendants wish to do – to pursue tangential issues and make tenuous arguments – is not necessary to accomplish a fair disposition of the charges and poses or inappropriate use of resources. Defendants can make their desired arguments without showing that settlement agreements were reached and a civil action by First Pryority Bank was dismissed.

For these reasons, the Court finds that the government's Motion to exclude settlement agreements and dispositional documents should be granted.

### B.     Prosecutorial Decisions

The government asks the Court to prohibit Defendants from mentioning that "other individuals . . . who may have engaged in criminal conduct with respect to the money transferred from OSU-UML to trust accounts" were not charged with committing a crime. *See* Mot. at 21.[7] As discussed above, Mr. Keogh contends information regarding these

---

[7] The Superseding Indictment refers to these persons as Individual 1 and Individual 2, and the wire transfers to their accounts are charged as criminal acts by Dr. Keogh in Counts 20-22.

individuals is relevant to his defense that they were the true perpetrators of fraud, and the fact they were not charged in this case will be obvious to the jury. He also argues that, if either individual testifies, the government's failure to charge them is proper impeachment evidence. Mrs. Keogh similarly argues that the prosecutors' decision not to prosecute other individuals involved in the alleged fraud is relevant to her defense and a proper subject of cross-examination if they testify.

Upon consideration, the Court finds that the government's request to "prohibit any mention of decisions not to prosecute" these individuals should be denied. *See* Mot. at 21. Without accepting Defendants' arguments that their criminal liability is negated by evidence that other nonparties engaged in fraudulent conduct, the Court agrees that the government's allegations and proof demonstrate the involvement of nonparties and their absence from the case is obvious. Also, the ruling sought by the Motion is premature until the individuals' status as witnesses is determined. Therefore, this part of the government's Motion is denied.

### C.   Lender Negligence or Fault

The government also moves to exclude any evidence or argument regarding alleged negligence or lack of due diligence by First Pryority Bank and USDA in making or approving the $3.2 million loan to Triton. The government anticipates that Defendants may suggest that deficient lending practices by First Pryority Bank or poor oversight by USDA somehow excuse the alleged false statements and fraudulent conduct charged in the Indictment. The government relies on authorities from other jurisdictions, and a prior ruling of this Court, holding that lender negligence or misconduct is not a defense to a

8

criminal fraud charge. *See* Mot. at 24; *see also United States v. Battles*, Case No. CR-11-354-D, 2012 WL 2087397 (W.D. Okla. June 8, 2012) (citing caselaw that describes this principle as "settled"). The government acknowledges that evidence a bank or agency would have made the same decision if it had known of an alleged falsity of loan information implicates the materiality element of the offenses. The government argues, however, that this element is governed by an objective standard so evidence of actual reliance is irrelevant, and that any probative value of this evidence is greatly outweighed by a danger of unfair prejudice or jury confusion. *See* Mot. at 23-24.

In opposition to the Motion, Defendants argue that they are entitled to present their defenses and to test the government's proof of relevant matters, including their knowledge of false statements in the loan papers and their intent to defraud First Pryority Bank and USDA. Mrs. Keogh also points to the Court's ruling in *Battles* that where a prior lending relationship exists, evidence of lending practices may be material to show a defendant's purpose or intent in making a particular submission. From Defendants' arguments, the Court understands there may be evidence regarding the knowledge or involvement of First Pryority Bank in securing the federally guaranteed loan to Triton that might draw into doubt Defendants' intent to influence First Pryority Bank and USDA by submitting some of the allegedly false documents.

Upon consideration, the Court finds that some evidence regarding First Pryority Bank's lending practices or conduct may be relevant and not unduly prejudicial and, thus, all this evidence should not be categorically excluded. Defendants do not argue, however, that any alleged negligence by USDA in approving or reviewing the loan is relevant to any

9

jury issue. Therefore, the Court finds that the government's Motion should be denied regarding First Pryority Bank's alleged conduct but that the Motion should be granted regarding any negligent act or omission by USDA.[8]

### D.     Criminal Penalties

The government asserts that Defendants should not be allowed to disclose to the jury any information regarding possible penalties that may be imposed if they are convicted of a crime. Only Mr. Keogh opposes this assertion. He states an intention to present as a defense to the charges of defrauding CAT and converting OSU-UML funds, an argument that the government is attempting to criminalize a mere civil dispute and, in making this argument, he will need to explain "the differences between criminal and civil violations, including the penalties associated therewith." *See* Resp. Br. at 30. Mr. Keogh acknowledges the general rule that jurors should not be informed about the consequences of a guilty verdict, but invokes an exception for special circumstances allegedly recognized in *Shannon v. United States*, 512 U.S. 573, 587 (1994). *See* Resp. Br. at 29.

The Court is not persuaded by this argument. Defendants similarly argued when moving to dismiss the charges regarding a fraudulent scheme to divert federal funds received for CAT's work, that this case involves nothing more than poor accounting or contract mismanagement. The Court rejected this theory as inconsistent with the

---

[8] By this ruling, the Court does not mean to preclude Defendants from questioning USDA representatives regarding the documents they received or information they considered. However, Defendants have not articulated any basis for admitting evidence regarding USDA's diligence in examining the documents submitted, or attempting to verify the information received, in its consideration of the Triton loan.

government's pleadings.  *See* 5/7/21 Order [Doc. No. 265] at 15.  Mr. Keogh again fails to explain how his defense of an accounting error or civil dispute bears on the fraud and conversion charges against him.  More importantly, however, he does not explain why the jury must know the statutory penalties for the allege crimes to distinguish criminal offenses from civil misconduct.  Despite his protest to the contrary, the Court finds that Mr. Keogh's proposal to inform jurors of his possible punishments would needlessly invite sympathy and jury nullification.  Informing a jury of the penalty for an offense is prejudicial and may constitute reversible error.  *See United States v. Greer*, 620 F.2d 1383, 1385 (10th Cir. 1980).  Thus, this part of the government's Motion is granted.

## Conclusion

For these reasons, the Court finds that no evidence should be admitted at trial regarding settlement agreements, civil judgments, or criminal penalties for Defendants' alleged offenses.  However, the government has failed to justify the exclusion of all allegations of lender negligence or fault and all references to prosecutorial decisions regarding nonparties.  Defendants are prohibited from presenting evidence or argument regarding any alleged negligence or lack of diligence by USDA regarding the Triton loan, but Defendants may inquire into the lending practices of First Pryority Bank in its dealings with Defendants.

**IT IS THEREFORE ORDERED** that the United States' Consolidated Motions in Limine [Doc. No. 121] is **GRANTED** in part and **DENIED** in part, as set forth herein.

**IT IS SO ORDERED** this 4th day of January, 2022.

_____
TIMOTHY D. DeGIUSTI
Chief United States District Judge