## IN THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )    Case No. CR-17-290-D |
| | ) |
| DANIEL WEBSTER KEOGH, | ) |
| a/k/a Web Keogh, and | ) |
| DANIELLE KEOGH, | ) |
| a/k/a Danielle E. Truitt, | ) |
| | ) |
| Defendants. | ) |

## O R D E R

Currently pending before the Court and now fully briefed is Defendant Daniel Webster Keogh's Motion to Dismiss the Superseding Indictment With Prejudice [Doc. No. 308], which Defendant Danielle Keogh has joined. *See* 1/5/22 Order [Doc. No. 327]. Included in the Motion is a request for an evidentiary hearing to substantiate Defendants' allegations of prosecutorial misconduct and *Brady* violations that allegedly justify the dismissal of the government's case. Defendants make serious accusations of unethical, bad faith conduct by the government's attorneys that include manipulating witnesses and manufacturing evidence favorable to their theory of the case. Defendants also accuse the government of withholding relevant interview notes and other exculpatory material. The Court takes these claims very seriously and has given them careful attention.

The government has responded [Doc. No. 333] in strong opposition to the Motion, arguing that the allegations are baseless and warrant no sanction at all, much less dismissal

of the case, and no evidentiary hearing is needed.   At Mr. Keogh's request, he was authorized to file a short reply brief [Doc. No. 351].

After full consideration of the allegations made against the prosecutors in this case, the Court finds that the Motion should be denied without a hearing for the reasons discussed *infra*.   Upon close examination of the supporting factual materials submitted with the Motion, the Court finds that Defendants' claims were raised in an untimely manner, do not appear to be well grounded in fact, and do not warrant further investigation at this point.

**1.      The Motion Is Untimely**

Defendants seek the imposition of sanctions against the government based on its attorneys' alleged misconduct in investigating and prosecuting this case.   The parties are familiar with the factual and procedural history of this case, which need not be restated. For purposes of this Order, it is sufficient to note that the Motion was filed on the eve of trial – more than two years after the deadline for dismissal motions expired – allegedly seeking relief based on conduct that occurred, or had become clear, recently as trial preparation intensified.   But in keeping with a pattern that has developed in the filings of Mr. Keogh's attorney, the Motion sounds an alarm that may be facially based on recent events but, in fact, raises issues that are not new or truly alarming.

Defendants renew a litany of familiar complaints concerning the alleged "strong arm" tactics of the prosecutors that began in July 2017 when Mr. Keogh made a plea agreement with the government that he later breached by failing to enter a guilty plea, and an alleged overzealous prosecution of Defendants for innocent conduct that became manifest in civil disputes and litigation.   Since the parties were unable to resolve this case

without a trial and the jury trial draws near, Defendants' refrain has escalated to now claim that the prosecutors: 1) worked to alter the statements of key witnesses and pressured them to recant some of their prior statements, *see* Mot. at 12-14, 19-21; and 2) refused to produce exculpatory *Brady* materials, *see id*. at 15-18, 21-24.[1]  In support of these allegations, Defendants provide documents that show the events about which they complain – the interviews or reinterviews of witnesses – occurred, at the latest, in August or early September of 2021; a document production that was allegedly incomplete occurred in November 2021.

Defendants' Motion was filed six business days before the start of their jury trial. Even with expedited briefing, it came at issue one business day before the trial begins.  The Motion was filed in complete disregard of the case schedule and without any motion by Defendants, or order of the Court, to allow a belated filing.  Defense counsel informed the Court during the final pretrial conference of outstanding issues regarding *Brady* disclosures and prosecutorial misconduct that, if not resolved by agreement, would be presented in a motion to dismiss.  *See* Pretrial Conf. Memo. [Doc. No. 315], ¶ 1.  The Court did not, by acknowledging counsel's notice, authorize an untimely filing; no information was

---

[1]  Defendants also include a gratuitous paragraph about the former lead prosecutor's departure from the United States Attorney's Office after she tried another complex criminal case before Senior District Judge Stephen P. Friot in November 2021.  The defendants in that case, one of whom was represented by Mrs. Keogh's attorneys, moved for a mistrial based on the prosecutor's trial conduct, and Judge Friot stated his view of the seriousness of her conduct in denying the motion.  The Court has consulted Judge Friot concerning these events and has reviewed an unofficial transcript of the relevant portion of the trial proceedings.  The Court can confidently state there is no connection between the trial conduct that occurred in that case, involving the cross-examination of a witness, and the alleged misconduct in the prosecutors' trial preparation of this case.

presented that would have permitted the Court to assess the reasonableness of such a request, which requires a showing of "good cause." *See* Fed. R. Crim. P. 12(c)(3).

**2.      Allegations of Recent Misconduct Are Unsupported**

Assuming Defendants had asked to file their Motion and asserted that the good-cause standard was met, the Court would have rejected their position. Defendants attempt to justify their extreme lateness by the government's recent production of interview reports (FBI 302's), interview memoranda, and most recently, agents' interview notes. The government effectively defeats this attempted justification in its response brief. The vast majority of the witness statements under scrutiny are ones Defendants have had for years; the government reinterviewed a handful of witnesses in 2021. Any contention that the recent interviews were inherently suspect is specious – there is nothing remarkable about lawyers reinterviewing witnesses in preparation for trial.

The 2021 interviews on which Defendants primarily base their misconduct claims involve witnesses associated with the Lawrence Livermore National Laboratory ("Livermore"), as evidenced by the fact they are the singular focus of the reply brief that Mr. Keogh filed when the Court granted his request to address the government's response. The allegedly improper change in the witnesses' statements involves the words they use to describe Livermore's research and development work with Mr. Keogh and his company. Defendants assert they became aware of this wording issue in November 2021. *See* Def.'s Mot. at 2 ("Memoranda of these interviews were produced to the Defense team only on November 11, 2021."); Reply Br. at 1. Upon examination of the supporting documents and the case record, the Court finds Defendants' allegation regarding Livermore witnesses

is demonstrably wrong; the different terminology was neither new nor fomented by the prosecution. Livermore previously moved to quash a subpoena duces tecum issued by Mr. Keogh. Although filed in 2019, the motion explained the technology at issue using the same exact words now in dispute, supported by the affidavit of witness Robert Yamamoto and deposition testimony he gave in civil litigation in 2013. *See* Lawrence Livermore Nat'l Sec., LLC Mot. Quash [Doc. No. 143] and Ex. 1, Yamamoto Decl. and attachs. [Doc. No. 143-1].

Turning briefly to other allegations, given the short time constraints caused by Defendants' late filing, the Court chose several instances of particularly serious misconduct alleged in the Motion and fact-checked Defendants' accusations. Doing so revealed that the rhetoric and accusations asserted by the defense fall flat. For example, Defendants assert that on September 5, 2019, the prosecutors asked witness Randy Allison of First Pryority Bank "to recant his 2014 statement . . . about the purpose of the loan and to state that he 'never said that the loan was for the purpose of research and development . . . .'" *See* Def.'s Mot. at 12. Exhibit 14, an interview memo, is cited as support. Nothing in Exhibit 14 supports this spin. Likewise, Defendants cite Exhibit 15, underlying agent notes of an Allison interview on September 30, 2015, to support an accusation that prosecutor Chris Stephens was "pressing Mr. Allison to abandon recollection that there would be a research and development component to the project." *See* Def.'s Mot. at 16. Again, nothing in the exhibit reasonably supports that characterization.

Finally, Defendants accuse the prosecutors of committing *Brady* violations and failing to satisfy the government's discovery obligations under Fed. R. Crim. P. 16. They

identify four areas of disclosure that allegedly remain incomplete:  1) underlying interview notes made by agents during witness interviews; 2) communications between the prosecutors and Livermore or its attorneys; 3) communications between the prosecutors and Oklahoma State University or its attorneys; and 4) documents reflecting any allegations of prosecutorial misconduct made against the former prosecutor, K. McKenzie Anderson.  Defendants complain that their recent demands for additional documents have resulted in the production of only a modest number of interview notes selectively chosen by the government.

The Court finds that the government's response to Defendants' demands for additional materials, as represented in its brief, is reasonable under the circumstances.  *See* Resp. Br. at 18-19.  Defendants have received all materials that, in the professional judgment of the government's attorneys, constitute exculpatory material or would call into question the credibility of witnesses.  The government has no obligation to produce "internal government documents made by an . . . agent in connection with investigating or prosecuting the case."  *See* Fed. R. Crim. P. 16(2).  Moreover, the government's discovery obligations extend only to items that are "material to preparing the defense" or that "the government intends to use . . . in its case-in-chief at trial."  *Id* . 16(a)(1)(E).

Defendants do not identify any agent notes they do not already have or any communications between the prosecutors and nonparties that are likely to contain material, exculpatory information or bear on the credibility of witnesses.  Nor do Defendants identify any allegations of misconduct against Ms. Anderson that would have any bearing on this case.  *See surpa* note 1.  The government has produced to Defendants documents that may

be used to show inconsistencies in certain witnesses' statements.  Testing inconsistencies in witness statements and probing credibility issues are matters for development during trial and the proper function of cross-examination of witnesses or, if Defendants so choose, the presentation of contradicting evidence.  Defendants do not allege sufficient facts to show that any documents material to preparing their defense have been withheld.

In short, the Court finds no timely or substantial allegation raised by Defendants' Motion that warrants further inquiry.

**3.    Dismissal Is Not Warranted**

If Defendants had shown misconduct, the Court would be called to exercise its discretion to impose an appropriate sanction.  *See United States v. Burke*, 571 F.3d 1048, 1054 (10th Cir. 2009) ("The choice of remedy is in the sound discretion of the district court.").  "Where the district court concludes that the government was dilatory in its compliance with *Brady*, to the prejudice of the defendant, the district court has discretion to determine an appropriate remedy, whether it be exclusion of the witness, limitations on the scope of permitted testimony, instructions to the jury, or even mistrial." *Id*.  Where noncompliance with discovery obligations occurs, Rule16(d)(2) authorizes the district court to "permit the discovery or inspection," "grant a continuance," "prohibit the party from introducing the evidence not disclosed," or "enter any other order that is just under the circumstances." *See Burke*, 571 F.3d at 1054-55.  But "dismissal is an extraordinary remedy and is only used in cases of serious and flagrant prosecutorial misconduct." *United States v. Orozco*, 916 F.3d 919, 925 (10th Cir. 2019); *see United States v. Apodaca*, 820 F.3d 348, 349 (10th Cir. 1987).  It is appropriate only when a more narrowly tailored

sanction, which preserves society's interest in the administration of criminal justice, is found to be insufficient.  *See Orozco*, 916 F.3d at 926.

In this case, the only remedy requested by Defendants' Motion is the dismissal with prejudice of this case.  For the reasons stated above, the Court finds that Defendants have not presented a claim of misconduct that would warrant this drastic sanction.

**IT IS THEREFORE ORDERED** that Defendant Daniel Webster Keogh's Motion to Dismiss the Superseding Indictment With Prejudice [Doc. No. 308] is **DENIED**.

**IT IS SO ORDERED** this 10th day of January, 2022.

_____
TIMOTHY D. DeGIUSTI
Chief United States District Judge