IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| UNITED STATES OF AMERICA, )<br>)<br>Plaintiff, )<br>)<br>-vs- )<br>)<br>DANIEL WEBSTER KEOGH, and )<br>   a/k/a Web Keogh, )<br>DANIELLE KEOGH, )<br>   a/k/a DANIELLE E. TRUITT, )<br>)<br>Defendants. ) | Case No. CR-17-290-D |

### ORDER GRANTING MICHAEL McCLINTOCK'S
### MOTION TO QUASH TRIAL SUBPOENA

Before the Court is the Motion to Quash Trial Subpoena [Doc. No. 314] filed by nonparty Michael D. McClintock. Defendant Daniel Webster Keogh has timely responded [Doc. No. 347] in opposition to the Motion, and Mr. McClintock has filed an authorized reply brief [Doc. No. 360].[1]

Defendant has issued a trial subpoena to Mr. McClintock, requiring him to appear and testify at the jury trial now set to begin January 24, 2022. Mr. McClintock is an attorney at McAfee & Taft who represented Oklahoma State University and Oklahoma State University–University Multispectral Laboratories, LLC ("OSU-UML") in civil litigation related to the alleged conduct in the Superseding Indictment. Defense counsel

---

[1] Because counsel for Defendant Daniel Webster Keogh issued the subpoena, the Court views the dispute about its enforcement as one between the movant and Mr. Keogh. Thus, all references in this Order to "Defendant" mean Mr. Keogh.

states an intention to call Mr. McClintock as a witness during Defendant's case-in-chief (if any) to testify regarding the following nonprivileged matters: "(1) communications with First Pryority Bank ("FPB") and other third parties relating to the bank's loan and improper transfer of Triton contracts that were collateral for that loan, and (2) communications with the Government regarding the criminal investigation in this case that are highly relevant to Defendant's defense, including the sufficiency and integrity of the Government's investigation." *See* Def.'s Resp. Br. at 1-2, 4. Mr. McClintock moves to quash the subpoena and prevent Defendant from calling him to testify as a trial witness on any topic.

## Standard of Decision

In criminal cases, subpoenas of witnesses for trial are authorized by Fed. R. Crim. P. 17(a). Unlike Rule 17(c) regarding subpoenas to produce documents, Rule 17(a) does not expressly provide for a motion to quash or limit the subpoena. However, federal courts have held that "[r]oughly the same standard applies to subpoenas compelling the attendance of witnesses" and Rule 17(c) subpoenas. *See Stern v. United States Dist. Ct.*, 214 F.3d 4, 17 (1st Cir. 2000). The Supreme Court in *United States v. Nixon*, 418 U.S. 683 (1974), established the standard governing a Rule 17(c) subpoena that has been distilled to three elements: 1) relevancy; 2) admissibility; and 3) specificity. *Id*. at 699-700. As applied to a Rule 17(a) subpoena, "a subpoena ad testificandum survives scrutiny if the party serving it can show that the testimony sought is both relevant and material." *Stern*, 214 F.2d at 17; *see also United States v. Bebris*, 4 F.4th 551, 559 (7th Cir.), *cert. denied*, 142 S. Ct. 489 (2021) (district court may quash a trial subpoena "[w]here the testimony sought is cumulative or immaterial)." The Supreme Court has implicitly recognized this

2

standard regarding trial subpoenas by stating that a defendant seeking compulsory attendance of a witness must show the witness's testimony is relevant and material. *See United States v. Valenzuela-Bernal*, 458 U.S. 858, 867-68 (1982). Material in this context means evidence that "might be sufficient to create a reasonable doubt" about guilt. *Id.* at 868; *see also Richmond v. Embry*, 122 F.3d 866, 872 (10th Cir. 1997) ("[M]aterial evidence is that which is exculpatory – evidence that if admitted would create reasonable doubt that did not exist without the evidence.").

## Discussion

### 1.   Communications With First Pryority Bank

Defendant proposes to examine Mr. McClintock regarding his communications with FPB, which is the alleged victim of the bank fraud conspiracy and false statement charges in Counts 1-4 and 6-11 of the Superseding Indictment. FPB filed a civil lawsuit after the borrower, Triton Scientific, LLC ("Triton"), defaulted on the $3.2 million loan in December 2012. FPB learned that proceeds of a contract that Triton had pledged as collateral for the loan could not be used satisfy to the debt because the contract had been assigned to OSU-UML. FPB's attorney contacted Mr. McClintock as OSU-UML's attorney, and Mr. McClintock agreed to provide documents and information to explain OSU-UML's position. Defendant points specifically to Mr. McClintock's "direct communications with representatives of FPB in September 2013." *See* Def.'s Resp. Br. at 4-5 and Ex. 1 [Doc. No. 347-1].

Defendant also argues that Mr. McClintock can testify at trial about what OSU-UML instructed "third parties to do with regard to the First Pryority Bank loan and the

3

transfer of Triton assets that secured it." *See* Def.'s Resp. Br. at 2. According to Defendant, the trial evidence will show Mr. McClintock became involved at some unspecified time in "attempting to run OSU-UML," that he directed Triton not to make "its agreed installment payments to First Pryority Bank, leading to the loan default," and that he "had significant communications with third parties about transferring Triton assets" including the contract that served as FPB's collateral. *Id*. at 3. Mr. McClintock allegedly "instructed Triton to assign [the contract] to the University." *Id*. at 5. Defendant contends Mr. McClintock's testimony "will show whether and why the bank suffered a loss" on the Triton loan. *Id.*

Mr. McClintock strongly denies Defendant's allegation that he was involved in OSU-UML's business operations or that he influenced Triton's business decisions. Mr. McClintock also disputes Defendant's assertion that he became involved in the loan dispute between FPB and Triton before he began representing OSU-UML in April 2013. Mr. McClintock asserts that Defendant's version of events and assumptions are simply wrong, but he also argues that any "post-loan conversations in his capacity as UML and OSU's legal counsel in the civil litigation have no relation or bearing on Dr. Keogh's alleged defenses in this case." *See* Reply Br. at 2.

Defendant's alleged fraudulent conduct regarding FPB's loan to Triton occurred, at the latest, in October 2012. *See* Superseding Indictment, ¶¶ 17, 20(R), 32. Triton defaulted on the loan in December 2012. *Id*. ¶ 20(S). Defendant vaguely states Mr. McClintock's representation of OSU-UML began "long before April 18, 2013, when he says he was retained to pursue civil litigation against Dr. Keogh and others." *See* Def.'s Resp. Br. at 3.

4

Defendant provides no facts to show that Mr. McClintock became involved before Triton defaulted on the loan.

Upon consideration, however, the Court finds no need to resolve who is right about Mr. McClintock's role in Triton's decisions regarding the loan and FPB's dispute with Triton. Assuming Defendant's alleged facts and assumptions are true, he does not identify any relevant and material information that Mr. McClintock's proposed testimony would provide.

The purpose of Mr. McClintock's testimony regarding communications with FPB and others about the Triton loan, as articulated by Defendant, is to show whether and why FPB suffered a loss on the loan. This evidence has no bearing on the charges of the Superseding Indictment or any legitimate defense to those charges. Although the parties do not fully agree on the law governing Counts 1-4 and 6-11, as reflected by differences in their proposed jury instructions, no party contends that the government must prove FPB suffered a loss in order to establish any offense in which FPB was the alleged victim. The loss issue may be relevant to sentencing and restitution issues, but it has no bearing on the elements of the offenses. Thus, Defendant has not shown that Mr. McClintock's proposed testimony regarding his communications with FPB are material in the sense that the evidence might create doubt about whether Defendant is guilty of a charged offense.

### 2.     Communications With the Government During the Investigation

Defendant also proposes to present testimony from Mr. McClintock about his involvement in the criminal investigation that led to this prosecution. Defendant shows that on nine occasions Mr. McClintock's law firm provided documents to FBI agents either

voluntarily or in response to a grand jury subpoena. In reply, Mr. McClintock asserts that his involvement in the criminal investigation was limited to producing documents in response to grand jury subpoenas and government requests, and that he played no part in the prosecutors' charging decisions or a plea agreement in 2017 that provided for payment of restitution to OSU-UML. Again, regardless of who is right about the extent of Mr. McClintock's involvement, the Court finds that Defendant provides no justification for making Mr. McClintock's communications with the government part of Defendant's jury trial regarding his guilt or innocence of the charges in the Superseding Indictment.

Although not well-presented in Defendant's brief, the Court understands from his prior arguments regarding other pretrial issues that Defendant believes the prosecutors, and perhaps investigators, acted improperly during the investigation in targeting Defendant and bringing the charges against him in this case. His arguments also suggest that Defendant may believe OSU-UML somehow influenced or fueled the investigation by providing information developed during its own investigation and civil litigation, and perhaps pressured the government to pursue the charges against Defendant. Thus, read generously, Defendant contends Mr. McClintock's testimony would show that OSU-UML was improperly involved in the prosecutors' charging decisions.

In prior orders, the Court has rejected Defendant's accusations of improper conduct and bias by the prosecutors, but as previously stated, even substantial allegations of improper prosecutorial conduct would not present a jury issue. *See*, *e.g.*, *United States v. Abboud*, 438 F.3d 554, 579 (6th Cir. 2006) ("defense of selective prosecution is a matter that is independent of a defendant's guilt or innocence, so it is not a matter for the jury");

6

*United States v. Berrigan*, 482 F.2d 171, 175 (3d Cir. 1973) (allegations of discriminatory prosecution did not raise a defense to be presented to or decided by the jury). "In our [criminal justice] system, so long as the prosecutor has probable cause to believe that the accused committed an offense defined by statute, the decision whether or not to prosecute, and what charge to file or bring before a grand jury, generally rests entirely in his discretion." *Bordenkircher v. Hayes*, 434 U.S. 357, 364 (1978). Further, the function of the jury trial is to determine Defendant's guilt or innocence of the government's charges against him. Evidence that Mr. McClintock or OSU-UML attempted to influence the prosecutors' decisions or conduct during the investigation is irrelevant to that question and not proper trial evidence. *See United States v. Rodella*, 59 F. Supp. 3d 1331, 1360-61 (D. N.M. 2014) (evidence of prosecutor's vindictive motive or bias is irrelevant to guilt or innocence and is inadmissible at trial).

The Court therefore finds that Defendant has not shown that Mr. McClintock's proposed testimony regarding his communications with the government is relevant or material to the charges in the Superseding Indictment.

## Conclusion

Defendant argues in his brief that he should not be required to show before trial the relevance and materiality of Mr. McClintock's testimony. He urges the Court to deny or reserve ruling on the Motion until the government has presented its case-in-chief. "At that time, the relevance of Mr. McClintock's communications and interactions with individuals outside his attorney-client relationship in rebutting the Government's case can be brought into focus." *See* Def.'s Resp. Br. at 5. Defendant provides no legal authority for this

7

request, and it is inconsistent with case law that places the burden on the party issuing a subpoena or otherwise seeking a witness's trial testimony to establish relevance.

**IT IS THEREFORE ORDERED** that Michael D. McClintock's Motion to Quash Trial Subpoena [Doc. No. 314] is **GRANTED**.  Mr. McClintock is excused from complying with Defendant's subpoena and need not appear to testify at trial.

**IT IS SO ORDERED** this 12th day of January, 2022.

_____
TIMOTHY D. DeGIUSTI
Chief United States District Judge